(Senior Judge Margolis)
No. 04-0068C

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CONSTELLATION GENERATION GROUP, LLC,
CALVERT CLIFFS NUCLEAR POWER PLANT, INC.,
and NINE MILE POINT NUCLEAR STATION, INC.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S NOTICE OF DIRECTLY-RELATED CASES,
AND DEFENDANT'S MOTION TO TRANSFER AND CONSOLIDATE
IN ACCORDANCE WITH RCFC 40.2(a)(3) AND 42.1

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D. C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

December 8, 2004

# TABLE OF CONTENTS

PAGE

BACKGROUND . . . . . 2

DISCUSSION . . . . . 5

I. TRANSFER OF THE TWO *NIAGARA* CASES AND THE *CONSTELLATION* CASE TO A SINGLE JUDGE IS APPROPRIATE BECAUSE THE *NIAGARA* CASES ARE "DIRECTLY RELATED" TO *CONSTELLATION* . . . . . 5

II. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE THE CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES . . . . . 7

A. Standards For Consolidation . . . . . 7

B. Niagara And Constellation's Cases Satisfy The Criteria For Consolidation . . . . . 8

1. Niagara And Constellation's Cases Share Common Issues Of Fact And Law . . . . . 8

2. Neither Constellation Nor Niagara Would Be Prejudiced By Consolidation . . . . . 14

CONCLUSION . . . . . 15

# TABLE OF AUTHORITIES

CASES PAGE(S)

Allfirst Bank v. Progress Rail Service Corp., 178 F. Supp. 2d 513 (D. Md. 2001) . . . . . 8

Bank of Montreal v. Eagle Associates, 117 F.R.D. 530 (S.D.N.Y. 1987) . . . . . 7

Cable Belt Conveyors, Inc. v. Alumina Partners of Jamica, 669 F. Supp. 577 (S.D.N.Y. 1987) . . . . . 7

Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798 (2004) . . . . . 1, 2, 6, 14

Farrell v. American Flyers Airline Corp., 42 F.R.D. 341 (S.D.N.Y. 1967) . . . . . 8

Harris v. L&L Wings, Inc., 132 F.3d 978 (4th Cir. 1997) . . . . . 7

Karuk Tribe of California v. United States, 27 Fed. Cl. 429 (1993) . . . . . 7, 8, 9

Mylan Pharmaceuticals Inc. v. Henney, 94 F. Supp. 2d 36 (D.D.C. 2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002) . . . . . 8

St. Bernard General Hospital, Inc. v. Hospital Service Associate, 712 F.2d 978 (5th Cir. 1983) . . . . . 8

STATUTES AND REGULATIONS

31 U.S.C. § 3727 . . . . . 10

41 U.S.C. § 15 . . . . . 10

41 U.S.C. §§ 10101-10270 . . . . . 10

42 U.S.C. § 10222(b)(3) . . . . . 10

10 C.F.R. § 961.11 . . . . . 2, 13, 14

TABLE OF AUTHORITIES (cont'd)

MISCELLANEOUS PAGE(S)

RCFC 40.1(b) . . . . . . . . . . 7

RCFC 40.2(a) . . . . . . . . . . 1, 2, 6, 7

RCFC 42 . . . . . . . . . . 2, 8

RCFC 42.1 . . . . . . . . . . 2

# INDEX TO ATTACHMENTS

| | |
|---|---|
| Attachment 1: | Complaint in Constellation Generation Group, LLC v. United States, No. 04-0068C (Fed. Cl.) (Margolis, S.J.) |
| Attachment 2: | Complaint in Niagara Mohawk Power Corp. v. United States, No. 04-0124C (Fed. Cl.) (Sypolt, J.) |
| Attachment 3: | Complaint in Niagara Mohawk Power Corp. v. United States, No. 04-0125C (Fed. Cl.) (Allegra, J.) |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSTELLATION GENERATION GROUP, LLC, CALVERT CLIFFS NUCLEAR POWER PLANT, INC., NINE MILE POINT NUCLEAR STATION, INC., Plaintiffs, | ) | |
| v. | ) | No.04–0068C (Senior Judge Margolis) |
| UNITED STATES OF AMERICA Defendant. | ) | |

DEFENDANT'S NOTICE OF DIRECTLY-RELATED CASES
AND DEFENDANT'S MOTION TO TRANSFER AND CONSOLIDATE
IN ACCORDANCE WITH RCFC 40.2(a)(3) AND 42.1

Pursuant to RCFC 40.2(a)(3), and in accordance with the recent guidance of the Court in Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798 (Nov. 4, 2004), defendant, the United States, respectfully submits this notice of directly-related cases.[1] After the plaintiffs in Constellation Generation Group, LLC v. United States, No. 04-0068C (Fed. Cl.) (Margolis, S.J.), filed their complaint, two other cases that are directly related to Constellation were filed in this Court: Niagara Mohawk Power Corp. v. United States, No. 04-124C (Fed. Cl.) (Sypolt, J.), and Niagara Mohawk Power Corp. v. United States, No. 04-125C (Fed. Cl.) (Allegra, J.). Pursuant to RCFC 40.2(a)(3), defendant requests that the Court transfer these cases to a single judge under the procedures contemplated by RCFC 40.2(a)(3).[2] Pursuant to RCFC 40.2(a)(3),

[1] Copies of this motion are being filed in Constellation, in Niagara Mohawk (No. 04-0124C), and in Niagara Mohawk (No. 04-0125C). Pursuant to RCFC 40.2(a)(3), we are filing this notice "in all related cases, captioned in the name of the earliest-filed case." We respectfully request that this notice and motion be deemed applicable to all three of those cases. In addition, copies of the complaints in all three of those cases are being filed with this motion, as Attachment Nos. 1, 2, and 3.

[2] At the present time, the Constellation and Niagara Mohawk cases are stayed, and we believe that a continuation of the stays in those three cases is appropriate. We are filing this

"the judge in the earliest-filed case," which is the Constellation case, "after consultation with the judge in the later-filed case, will grant or deny the motion to transfer."

The Government further requests that, following transfer and pursuant to RCFC 42(a) and 42.1, the Court consolidate these three cases, which involve the assignor and assignee of the same two contracts with the Department of Energy ("DOE"). Transfer and consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the three cases.

## BACKGROUND

In June 1983, Niagara Mohawk Power Corporation ("Niagara") and DOE entered into Contract No. DE-CR01-83NE44398, the Standard Contract for Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"),[3] for disposal of spent nuclear fuel ("SNF") generated at Unit 1 of the Nine Mile Point Nuclear Reactor ("NMP"). Att. 1 (Compl. ¶ 1); Att. 2 (Compl. ¶ 3).[4] On August 13, 1985, Niagara and DOE executed a second Standard Contract, Contract No. DE-CR01-85RW00048, for disposal of SNF generated at NMP Unit 2. Att. 1 (Compl. ¶ 1); Att. 3 (Compl. ¶ 3). The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998."

---

motion at this time both in response to the Court's admonition in Entergy Nuclear that notices of directly-related cases should be filed "[a]s soon as counsel becomes aware of an earlier-filed, directly-related case," Entergy Nuclear, 62 Fed. Cl. at 801, and so that these three cases are in an appropriate procedural posture when the stays are lifted. Nevertheless, through this motion, we do not intend to indicate that a continuation of the current stays is inappropriate.

[3] The terms of the Standard Contract are published at 10 C.F.R. § 961.11.

[4] "Att. _" refers to the attachments to this notice and motion. "Compl. ¶ __" refers to the complaints filed in these three cases, which are the attachments accompanying this notice and motion.

10 C.F.R. § 961.11, Art. II. Although the Standard Contract provided that the Government would begin its program of accepting SNF from the commercial industry by January 31, 1998, 10 C.F.R. § 961.11, Art. II, the Standard Contract did not specify any mandatory minimum "rate" at which DOE would be required to continue acceptance. Rather, the Standard Contract contained a contractual mechanism by which a queue for SNF acceptance would be developed that would determine the particular time in which DOE would accept SNF from each Standard Contract holder.[5] DOE was unable to begin SNF acceptance by January 31, 1998. Att. 1 (Compl. ¶ 32); Att. 2 (Compl. ¶ 28); Att. 3 (Compl. ¶ 29).

On or about November 7, 2001, Niagara sold both NMP Unit 1 and NMP Unit 2 either to Constellation Generation Group, LLC ("Constellation") or to an affiliate of Constellation. Att. 1 (Compl. ¶ 7); Att. 2 (Compl. ¶¶ 5 & 32); Att. 3 (Compl. ¶¶ 5 & 33).[6] As part of the sale, Niagara assigned its two contracts relating to NMP Unit 1 and NMP Unit 2 to Constellation or its affiliate. Att. 1 (Compl. ¶ 7); Att. 2 (Compl. ¶ 5); Att. 3 (Compl. ¶ 5).

On January 22, 2004, Constellation, along with Calvert Cliffs Nuclear Power Plant, Inc., and Nine Mile Point Nuclear Station, LLC, filed a complaint in this Court, alleging that they were entitled to damages for DOE's delay in beginning SNF acceptance under the Standard Contract from four nuclear reactors, including NMP Unit 1 and NMP Unit 2. Att. 1 (Compl. ¶¶ 1 & 7). In the "Notice of Related Cases" that they filed simultaneously with their complaint, the

---

[5] All commercial nuclear power reactor owners entered into a Standard Contract with DOE, and the basic terms of each Standard Contract are virtually identical.

[6] In their complaints, Constellation and Niagara use slightly different corporate names when identifying the entity or entities that purchased Niagara's reactors. For purposes of this notice and motion, it is unnecessary to resolve any issue about the precise name of the entity that purchased NMP Unit 1 and NMP Unit 2.

Constellation plaintiffs informed the Court that this case "may be related" to numerous other cases pending in this Court alleging breaches of the Standard Contract. The Constellation plaintiffs alleged that they acquired their interest in NMP Unit 1 and NMP Unit 2 and in the Standard Contract relating to those nuclear reactors through their November 7, 2001 purchase and assignment from Niagara. Att. 1 (Compl. ¶ 7). Constellation's case was assigned to Senior Judge Margolis.

Subsequently, on January 29, 2004, Niagara filed a complaint in Niagara Mohawk Power Corp. v. United States, No. 04-0124C (Fed. Cl.), seeking damages for a taking pursuant to the Fifth Amendment of the United States Constitution relating to DOE's delay in beginning SNF acceptance under the Standard Contract applicable to NMP Unit 1, Att. 2 (Compl. ¶ 1), and Niagara and additional plaintiffs filed a complaint in Niagara Mohawk Power Corp. v. United States, No. 04-0125C (Fed. Cl.), seeking damages for a Fifth Amendment taking relating to the Standard Contract applicable to the NMP Unit 2. Att. 3 (Compl. ¶ 1). These cases were assigned to Judge Sypolt and Judge Allegra, respectively. In each of these complaints, Niagara alleged that it was seeking damages arising prior to its sale of these nuclear reactors to Constellation Energy Group and Constellation Nuclear, LLC. See Att. 2 (Compl. ¶ 5); Att. 3 (Compl. ¶ 5). In its "Notice of Related Cases" filed simultaneously with its two complaints, Niagara notified the Court that "this action may be related to the following actions that were filed and are currently pending in this Court" and then listed 40 cases, including the Constellation case, to which its two complaints might be directly or indirectly related. However, Niagara did not identify the fact that the nuclear reactors and the SNF at issue in its two complaints were the same nuclear reactors and SNF at issue in Constellation.

## DISCUSSION

### I. TRANSFER OF THE TWO *NIAGARA* CASES AND THE *CONSTELLATION* CASE TO A SINGLE JUDGE IS APPROPRIATE BECAUSE THE *NIAGARA* CASES ARE "DIRECTLY RELATED" TO *CONSTELLATION*

RCFC 40.2(a) requires that a plaintiff filing a case that is directly related to another case pending before the Court of Federal Claims file a "Notice of Directly-Related Cases" upon all other parties and the Court. RCFC 40.2(a)(1)(B) expressly defines "directly-related" cases as cases that "involve the same contract, property or patent." This obligation to file a "Notice of Directly-Related Cases" remains even when it is discovered after the filing that the case is directly related to another case pending before the Court. See RCFC 40.2(a)(3).

In this case, based upon the assignments of the two Standard Contracts from Niagara to Constellation, each of Niagara's cases clearly involves a contract and property that also form the basis of Constellation's complaint. That is, Docket Nos. 04-0068C (Constellation) and 04-0124C (Niagara) both relate to DOE's delay in disposing of the same SNF generated at the same nuclear reactor, NMP Unit 1, while Docket Nos. 04-0068C (Constellation) and 04-0125C (Niagara) both relate to DOE's delay in disposing of the same SNF generated at NMP Unit 2. Because the two Niagara cases seek damages arising from the same contracts and the same property at issue in Constellation, each of the Niagara cases is directly related to Constellation.

Niagara, as the plaintiff that filed the later suits, was required pursuant to RCFC 40.2 to file a notice with the Court that specifically identified the scope of the interrelationship between the two Niagara cases and the Constellation case. Unfortunately, although Niagara referenced in the "Notice of Related Cases" that it filed in each of its cases on January 29, 2004, the possibility that its cases were potentially directly- or indirectly-related to all of the 40 SNF cases that it

identified in those notices because they all involved alleged breaches of the standardized contracts that nuclear utilities entered with DOE and/or takings claims arising out of that alleged breach, Niagara did not mention that there is one SNF case in particular to which both of its cases are clearly and directly related, the Constellation case.

Recently, in Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798 (Nov. 4, 2004), in response to the Government's motion to reassign two other SNF cases that were based upon the same Standard Contract to a single judge and to consolidate them, this Court admonished that, "[a]s soon as counsel becomes aware of an earlier-filed, directly-related case, they must file a notice with the court," id. at 801, and that the "court cannot be put in the position of monitoring its entire docket to learn of such cases *sua sponte*." Id. at 801-02. Because Constellation and the first-filed Niagara case (No. 04-0124C) involve claims arising from the same delay relating to the same contract, as well as damages arising from DOE's delay in accepting the same SNF generated at the same nuclear reactor, assignment of both cases to a single judge, and consolidation of the actions, is likely to conserve judicial resources, and promote an efficient determination of the actions, within the meaning of RCFC 40.2(a)(4). Similarly, because Constellation and the second-filed Niagara case also involve the same contract, the same SNF, and the same nuclear reactor (NMP Unit 2), they should be deemed directly related and transferred accordingly. Pursuant to RCFC 40.1(b) and 40.2(a)(3), the Government respectfully requests that the two Niagara cases and the Constellation case be transferred to a single judge in accordance with the procedures identified in RCFC 40.2(a)(3).

## II. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE THE CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES

### A. Standards For Consolidation

Motions to consolidate are governed by RCFC 42, which provides that consolidation may be appropriate when actions involve common questions of law or fact:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make any such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

In determining whether consolidation is appropriate, the Court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. See Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993). Indeed, "[o]ne of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts." Id. (quoting Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987); see also Cable Belt Conveyors, Inc. v. Alumina Partners of Jamica, 669 F. Supp. 577, 581 (S.D.N.Y. 1987) (holding that consolidation was appropriate where different factual findings between the two cases could result in inconsistent damages awards).

Courts have held that, where two plaintiffs have sued the same defendant, alleging the same misconduct, and answered with the same defenses, the two cases share "common issues of law and fact," justifying consolidation. Harris v. L&L Wings, Inc., 132 F.3d 978, 981 n.2 (4th

Cir. 1997); see Allfirst Bank v. Progress Rail Serv. Corp., 178 F. Supp. 2d 513, 520 (D. Md. 2001) (where the parties are the same, the claims and defenses are identical, and the same contract must be construed in each case, consolidation is appropriate).

The decision whether to consolidate two cases is within the discretion of the Court. Karuk Tribe, 27 Fed. Cl. at 433. Moreover, the Court may order consolidation despite the opposition of the parties. See St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Assoc., 712 F.2d 978, 989 (5th Cir. 1983).

### B. Niagara And Constellation's Cases Satisfy The Criteria For Consolidation

#### 1. Niagara And Constellation's Cases Share Common Issues Of Fact And Law

Niagara's and Constellation's cases clearly share common issues of fact and law. Indeed, these two cases involve the very same contract, the same nuclear power facilities, the same SNF, and the same alleged DOE delay in accepting that SNF. As noted above, Niagara originally held the Standard Contracts at issue in its two cases, but assigned those contracts to Constellation on November 7, 2001. Now, although Niagara's complaint seeks damages only for a taking under the Fifth Amendment of the United States Constitution and not for a breach of contract, it is clear that Niagara's damages claims, like Constellation's damages claims, are alleged to have resulted from the same delay in acceptance of the same SNF from the same nuclear reactors covered by those two contracts.

The fact that the plaintiffs assert different legal theories based upon the same facts does not warrant the denial of a motion to consolidate. See Farrell v. American Flyers Airline Corp., 42 F.R.D. 341, 342 (S.D.N.Y. 1967). In Mylan Pharmaceuticals Inc. v. Henney, 94 F. Supp. 2d

36 (D.D.C. 2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002), two generic drug manufacturers brought separate lawsuits challenging the Food and Drug Administration's ("FDA") exclusivity determination in favor of another generic drug manufacturer. One manufacturer sought to enjoin the FDA from imposing an "indefinite delay" on the effective date of a particular drug, while the other manufacturer, in addition to seeking to enjoin the FDA, also sought entitlement to an exclusivity incentive for marketing its drug. The FDA sought to consolidate the two drug manufacturers' cases into a single lawsuit, and the manufacturer's opposed the consolidation motion upon the grounds that they demanded different forms of relief. The court rejected this argument, concluding that consolidation was appropriate and noting that "plaintiffs' request for different forms of relief does not vitiate the propriety of consolidation, but rather, consolidation is proper to any or all matters in issue which are common." Id. at 44 (emphasis in original).

Similarly, in Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 431 (1993), an Indian tribe and individual members of another Indian tribe each sued the Government, alleging a taking of a particular Indian reservation. The Court granted the Government's motion for consolidation, explaining as follows:

> Here, the plaintiffs in each case allege the same government acts created property interests in the same land, and both allege Fifth Amendment takings arising out of the enactment of the Settlement Act. These are common questions of mixed law and fact. It is true that the court will have to hear different evidence to decide factually whether each plaintiff had a vested right in the former Hoopa Valley Reservation, but these individual issues do not predominate over the common issues. There is no reason to believe that the individual issues will cause undue delay and prejudice. Because both cases present the same legal questions and

> arise out of substantially the same facts, this court grants defendant's motion to consolidate.

Id. at 433 (citations omitted).

Here, not only do both of Niagara's cases share the exact same factual basis as Constellation's case, but they share many of the same issues of law. For example, the Court will have to determine the scope and validity of Niagara's assignment of the Standard Contract to Constellation. Although contractors typically are prohibited by statute from assigning contracts or claims against the Government to a third party, see 31 U.S.C. § 3727 & 41 U.S.C. § 15, the Nuclear Waste Policy Act ("NWPA"), 41 U.S.C. §§ 10101-10270, contains a specific assignment provision providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). Nevertheless, the scope of the purported assignment from Niagara to Constellation is unclear at this point in the litigation and may become an issue that the Court will need to address.

Moreover, by defining the meaning of the statutory assignment provision (which was incorporated into the Standard Contract), and by defining the scope of the assignment, the Court will be able to ensure that the plaintiffs' damages claims in the three cases do not overlap; that no duplicative damages recovery occurs; that the different plaintiffs do not prevail (to the Government's prejudice) upon conflicting interpretations of the Government's obligations under the two contracts at issue here; and that any "diminution in value" award to Niagara, which Niagara seeks in its complaint (Att. 2 (Compl. ¶¶ 36 & 40)), is somehow accounted for and offset

against any award to Constellation, which, if it received its own damages award, would be the ultimate beneficiary of that temporary "diminution in value."

In its complaint, Niagara alleges that, when it began seeking offers from parties interested in purchasing its nuclear reactors, "the number of generation companies willing to participate in the nuclear generation business, the quantity of bids submitted, and the offering price in the bids for" NMP Unit 1 and NMP Unit 2 "were depressed as a result of the perception by the potential buyers that DOE's on-going failure to remove and dispose of SNF increased the future costs to operate and risks of ownership of nuclear power-plants, and decreased the amount that the buyers were prepared to offer to purchase the nuclear power-plant assets." Att. 2 (Compl. ¶ 33); Att. 3 (Compl. ¶ 34). Niagara also alleges that "DOE's failure to commence disposal of SNF on January 31, 1998, . . . and its public pronouncement that it would not commence the disposal of SNF until 2010, at the earliest, significantly diminished the value of" NMP Unit 1 and NMP Unit 2 and that this diminished value "was reflected in the auction process, and ultimately in the sale price for an otherwise extremely valuable nuclear electric generating facility." Att. 2 (Compl. ¶ 36); Att. 3 (Compl. ¶ 37). Niagara then asserts that it should recover the diminished value that it received upon its sale of NMP Unit 1 and NMP Unit 2 as damages in its two cases.

Conversely, Constellation is seeking to recover as damages in its litigation all of the costs that it allegedly incurred and will incur in storing SNF as a result of DOE's delays. That is, even though (according to Constellation) it has received compensation from <u>Niagara</u> – in the form of a reduced purchase price – for DOE's delay in beginning SNF acceptance and was allegedly able to compensate itself, at least in part, for continuing additional SNF storage costs through that reduced purchase price, Constellation is seeking to recover all of those costs from DOE in its

litigation. As a result, Constellation and Niagara are both claiming extensive damages from the United States based upon conflicting theories of recovery. If both plaintiffs' claims were granted, the United States would pay damages <u>twice</u> for the same partial breach of contract under the same Standard Contract, based upon inconsistent theories of recovery. That type of double liability would be inappropriate.[7]

Indeed, this factual overlap between the two cases is demonstrated in part by the fact that many of the witnesses in both cases will be the same. For example, with respect to Niagara's diminution in value claim, it is highly likely, to the extent that discovery is necessary, that the Government will need to depose Constellation employees to determine whether the Government's breach played any role in the price that Constellation ultimately paid for the nuclear reactors. Moreover, if discovery in the other SNF cases is any indication, it is probable that the Government witnesses will be the same in both cases. The Government's witnesses will have no knowledge concerning Constellation's and Niagara's specific damages. However, Government witnesses have been deposed in the other SNF cases upon issues such as the rate and schedule of SNF acceptance under the Standard Contract and the status of Greater Than Class C radioactive waste ("GTCC"). Consequently, not only is there a factual overlap between the three cases, but it also is anticipated that many of the witnesses will be the same in both cases.

---

[7] In addition, Niagara also appears to be claiming as takings damages "costs associated with planning related to the operation and maintenance of facilities and equipment necessary to store SNF at" NMP Unit 1 and NMP Unit 2 "and other administrative costs arising directly from the failure of the Government to dispose of SNF from" those two reactors. Att. 2 (Compl. ¶ 37); Att. 3 (Compl. ¶ 38). Yet, Constellation appears to be claiming damages that are precisely the same. Att. 1 (Compl. ¶ 39). Consolidation of these cases would eliminate any overlap in these damages claims.

Moreover, many of the legal defenses raised by the Government apply with equal force to both Constellation and Niagara. For example, as noted above, both Constellation and Niagara appear to be claiming damages for the costs associated with storing SNF. However, whether any of the plaintiffs have incurred damages associated with the cost of storing SNF turns in part upon the determination of the rate and schedule of SNF acceptance. Absent consolidation, there is the potential that the three judges currently assigned to these cases could apply different rates of SNF acceptance to the Standard Contract, leading to inconsistent judgments in the three cases. Further, neither Niagara nor Constellation has yet paid the one-time fee mandated by Article VIII.B.2 of the Standard Contract, which the contract holder is obligated to pay before DOE accepts any of the contract holder's SNF, under the Standard Contract for NMP Unit 1. See 10 C.F.R. § 961.11, Art. VIII.B.2. Any issues surrounding the non-payment of the one-time fee, including whether the payment of the one-time fee is a condition precedent to DOE's obligation to accept the contract holder's SNF and whether, alternatively, DOE is entitled to offset any damages award by the amount of the unpaid one-time fee, are equally applicable to both the Constellation and the Niagara cases and, if decided together, will eliminate the possibility of inconsistent results and inconsistent allocations of responsibility for the one-time fee.

Similarly, it is anticipated that the Government will assert as a defense that the Standard Contract does not cover the disposal of GTCC and, consequently, that any costs associated with SNF storage would have been incurred in any event. Similarly, because DOE is not necessarily obligated to accept failed fuel under the same schedule as standard SNF, see 10 C.F.R. § 961.11, Art. VI.A.2(b), the plaintiffs cannot recover as damages costs that they would have incurred for storing failed fuel regardless of DOE's breach. Similarly, another likely defense that the

Government will raise involves the canistering of the SNF. Under the Standard Contract, fuel that has been canistered may be removed from the approved acceptance schedule for standard SNF and characterized as non-standard fuel, see 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E, which could affect the schedule upon which DOE was obligated to accept Constellation/Niagara's SNF. Again, different assumptions and findings by different judges would create a risk of inconsistent judgments. Therefore, based upon the numerous common issues of fact and law, consolidation of these two cases would greatly promote judicial efficiency.

2. Neither Constellation Nor Niagara Would Be Prejudiced By Consolidation

Not only would consolidation promote judicial efficiency under the circumstances, but consolidation would not prejudice either Constellation or Niagara. Both cases are in the same phase of pretrial procedure, and there is little, if any, risk of delay in either case should they be consolidated. In Entergy Nuclear, the Court, after transferring two SNF cases involving the same nuclear reactor and contract to a single judge, denied the Government's motion for consolidation "largely because [one of the two cases] is procedurally at a significantly more advanced stage," but without prejudice to later reconsideration of the consolidation issue because "further development of both cases may reduce the procedural disparity" so that "consolidation may be appropriate at some future time." Entergy Nuclear, 62 Fed. Cl. at 803. In these cases, there is no procedural disparity in the three cases. All three cases are currently stayed, no dispositive motions are pending in any of the three, and, although we believe that a continued stay in all three cases is warranted at this time, consolidation will allow the three cases (when the stays in the cases end) to develop in an efficient and non-duplicative manner.

Moreover, consolidation of these three cases would not result in any confusion. Indeed, consolidation would minimize potential confusion by allowing a single judge to consider the entire factual background of these two contracts, rather than have three different judges consider truncated versions of the same facts. As mentioned above, it is anticipated that many of the same witnesses would be utilized in both cases. Therefore, there would be little, if any, prejudice to either Constellation or Niagara if consolidation is granted.

In fact, if consolidation is not granted, the Government would be prejudiced, as it would force the Government to expend significant judicial resources trying substantially similar cases, which involve the same SNF, the same nuclear reactors, and the same contracts, and risk the possibility of inconsistent judgment based upon cases that share the same factual predicate and substantially similar legal issues. Under these circumstances, consolidation of these three cases is appropriate.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to transfer the two Niagara cases so that they are before the same judge that is presiding over the Constellation case and, further, that the Court consolidate the three cases.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of the General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

December 8, 2004

Attorneys for Defendant