Case No. 04-0068C
(Senior Judge Margolis)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CONSTELLATION GENERATION GROUP, LLC,

CALVERT CLIFFS NUCLEAR POWER PLANT, INC.,

NINE MILE POINT NUCLEAR STATION, LLC,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA

Defendant.

# OPPOSITION BY THE CONSTELLATION PARTIES TO DEFENDANT'S MOTION TO TRANSFER AND CONSOLIDATE

Brad Fagg
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile
COUNSEL OF RECORD FOR
CONSTELLATION GENERATION GROUP, LLC
CALVERT CLIFFS NUCLEAR POWER PLANT, INC.,
and
NINE MILE POINT NUCLEAR STATION, LLC

December 27, 2004

## TABLE OF CONTENTS

**Page**

OPPOSITION BY THE CONSTELLATION PARTIES TO DEFENDANT'S MOTION TO TRANSFER AND CONSOLIDATE....................1

1. The Cases Are Not Directly Related....................2

2. These Cases Should Not Be Consolidated Because They Do Not Involve Common Questions Of Fact Or Law Or Substantial Risks Of Inconsistent Judgments....................5

3. The Cases Should Not Be Consolidated Because Consolidation Would Not Further The Interests Of Efficiency Or Justice....................11

CONCLUSION....................13

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Commonwealth Edison Company v. United States*, 56 Fed. Cl. 652 (2003) ......................3

*Detroit Edison Company v. United States*, 56 Fed. Cl. 299 (2002) ...................................3

*Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798 (2004) .......*passim*

*Karuk Tribe of California v. United States*, 27 Fed. Cl. 429 (1993) .................................8

*LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363 (2003) .............................10

*Maine Yankee Atomic Power Company v. United States*, 225 F.3d 1336 (Fed. Cir. 2000) ....................................................................................................3

*Northern States Power Company v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) .........3

### FEDERAL STATUTES

42 U.S.C. § 10222(b)(3) ..........................................................................................3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSTELLATION GENERATION GROUP, LLC**<br><br>**CALVERT CLIFFS NUCLEAR POWER PLANT, INC.,**<br><br>**NINE MILE POINT NUCLEAR STATION, LLC,**<br><br>Plaintiffs,<br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | ) | Case No. 04-0068C<br><br>Senior Judge Margolis |

**OPPOSITION BY THE CONSTELLATION PARTIES TO DEFENDANT'S MOTION TO TRANSFER AND CONSOLIDATE**

Plaintiffs, Constellation Generation Group, LLC ("CGG"), Calvert Cliffs Nuclear Power Plant, Inc. ("CCNPP") and Nine Mile Point Nuclear Station, LLC ("NMPNS") (collectively for these purposes "Constellation"), respectfully submit the following opposition to "Defendant's Notice of Directly Related Cases, And Defendant's Motion To Transfer And Consolidate In Accordance With RCFC 40.2(a)(3) and 42.1" ("Def. Mot."). Constellation is filing this opposition in the same cases in which the government filed its motion, namely this one and *Niagara Mohawk*, No. 04-124C (Fed. Cl.) (Margolis, J.), and *Niagara Mohawk et al.* No. 04-125C (Allegra, J.).

In its motion, the government unilaterally declares these three cases to be "directly related." However, quite unlike the circumstances in *Entergy Nuclear Indian Point 2, LLC v.*

*United States*, 62 Fed. Cl. 798 (2004), these cases do not involve multiple parties claiming breach-of-contract damages under the same contract. Constellation is the only party raising breach-of-contract claims. The Niagara Mohawk plaintiffs are only asserting takings claims. Moreover, the purported takings theories asserted by the Niagara Mohawk plaintiffs here can only—by definition and as they have been pled—involve "property" rights wholly separate and distinct from any rights held by Constellation. In short, unlike the circumstances in *Entergy*, 62 Fed. Cl. 798, these cases do not involve the "same contract, property or patent" within the meaning of RCFC 40.2(a)(1)(B), and are therefore not "directly related." This is because the Niagara Mohawk plaintiffs assert no "contract" claims at all, and the purported "property" at issue in the Niagara Mohawk lawsuits (*i.e.*, alleged diminished value or sales price of the plants) is not involved at all in the Constellation lawsuit.

For these reasons, transfer and (especially) consolidation are not justified.[1/] Moreover, in these circumstances a host of compelling practical factors militate against granting the procedural relief sought by the government. Those factors include the inequity of forcing these plaintiffs to participate in the same lawsuit, when the plaintiffs are certain to pursue markedly different claims, evidence, and issues, and when they are eventually likely to pursue dramatically different prosecution strategies.

**1. The Cases Are Not Directly Related**

A. *The three lawsuits.* In this lawsuit, No. 04-68C, Constellation seeks damages in

---

1/ On December 21, 2004, the Chief Judge reassigned *Niagara Mohawk*, No. 04-124C (Fed. Cl.) from Judge Sypolt to Judge Margolis, pursuant to RCFC 40.1(c). Constellation does not oppose that reassignment, nor have any particular objection to reassignment or transfer generally. Constellation's position, however and as described below, is that these cases are not "directly related" under the Rules, and therefore that such a justification should not be cited as a reason for transfer or reassignment of the other *Niagara Mohawk* case, No. 04-125C (Allegra, J.). Constellation's primary opposition here, however, is to consolidation.

connection with a Standard Contract that it holds for a two-unit nuclear power plant in Maryland, the Calvert Cliffs Nuclear Power Plant, and in connection with two Standard Contracts for the Nine Mile Point Nuclear Power Plant ("NMP"), Units 1 and 2, respectively, located in upstate New York. Complaint ¶ 1 (Attachment 1 to Def. Mot.). With respect to the NMP plants, Constellation is the current, and only, "holder of the two Standard Contracts for NMP, Units 1 and 2." Complaint ¶ 3 (Attachment 1 to Def. Mot.). Constellation bought majority interests in both plants in 2001, and Constellation was duly assigned all of the rights and duties under the Standard Contracts upon those acquisitions. *See* 42 U.S.C. § 10222(b)(3) (providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable . . ."). Constellation is now the sole party entitled to pursue breach of contract claims against the government arising out of DOE's breach of the Standard Contracts for the NMP plants. Accordingly, the gravaman of Constellation's complaint is a simple claim for breach of contract damages, consistent with what the Federal Circuit has termed an industry-wide government "breach" of all contracts for disposal of spent nuclear fuel and/or high level waste, entitling contract holders to pursue damage suits in this Court. *Maine Yankee Atomic Power Company v. United States*, 225 F.3d 1336, 1341 (Fed. Cir. 2000); *Northern States Power Company v. United States*, 224 F.3d 1361, 1363 (Fed. Cir. 2000). The government's continuing failures are also alleged by Constellation to constitute a breach of the government's contractual duty of good faith and fair dealing, and to constitute a compensable taking of Constellation's property rights in the physical sites.[2/] *See* Attachment 1 to Def. Mot.

---

2/ Judges of this Court have ruled differently regarding the legal viability of takings claims by parties currently in possession of spent nuclear fuel. *Compare, e.g., Commonwealth Edison Company v. United States*, 56 Fed. Cl. 652 (2003) (dismissing takings claim) *with Detroit Edison Company v. United States*, 56 Fed. Cl. 299 (2002) (refusing to dismiss takings claim). Accordingly, as a protective matter, Constellation currently asserts a takings claim. The core of Constellation's lawsuit, however, is unmistakeably for breach-of-contract.

The Niagara Mohawk plaintiffs are the sellers of interests in NMP Unit 1 (in Case No. 04-124C) and NMP Unit 2 (in Case No. 04-125C).[3/] Those plaintiffs, in contrast to Constellation, do not assert claims for breach of contract. Nor could they: by the terms of the sales of the NMP plants, the Niagara Mohawk plaintiffs assigned all of the rights and duties under the Nine Mile Point Standard Contracts to Constellation. Both Niagara Mohawk complaints contain one and only one count: a "takings count," based upon alleged diminution in value of the plant resulting in a reduced sales price for the plant. Complaint No. 04-124C ¶¶ 8, 44-51, Attachment 2 to Def. Mot.; Complaint No. 04-124C ¶¶ 8, 45-52, Attachment 3 to Def. Mot. Whatever the merits of such a takings theory (and as a factual and legal matter Constellation believes this type of takings claim to be insupportable), these claims are clearly of an entirely different character than the straightforward breach-of-contract damage claims asserted by Constellation.

B. *The contrasting circumstances in the Entergy case*. These circumstances are markedly different from those presented in the *Entergy* case upon which the government primarily relies. There, the seller of a nuclear plant asserted a claim for breach of contract, and the buyer of the plant also asserted a claim for breach of that very same contract. Central to the Court's analysis were the facts that both the buyer and the seller of the Indian Point 2 nuclear power plant were expressly bringing suit against the government for "breach of contract," *Entergy*, 62 Fed. Cl. at 800, and that the buyer "acknowledge[d] that the two cases relate to the same contract and thus are directly related." 62 Fed. Cl. at 801. Constellation, the buyer here,

---

3/ For simplicity, we refer to the plaintiff in Case No. 04-124C (the former majority owner of NMP Unit 1 Niagara Mohawk Power Corporation) and the plaintiffs in Case No. 04-125C (the former majority owner of NMP Unit 2 Niagara Mohawk Power Corporation, and former minority owners New York State Electric & Gas Corporation, Rochester Gas and Electric Corporation, and Central Hudson Gas & Electric Corporation) collectively as the "Niagara Mohawk plaintiffs."

makes no such acknowledgment or concession, because the facts do not so warrant. The two sets of plaintiffs here clearly are not, (as the government argued the plaintiffs in the *Entergy* cases were) merely asserting "different damage theories based upon the identical theory of liability." 62 Fed. Cl. at 802. Rather, the two sets of plaintiffs here are asserting entirely different claims, entirely different theories of liability, and entirely different bases for recovery.

**2. These Cases Should Not Be Consolidated Because They Do Not Involve Common Questions Of Fact Or Law Or Substantial Risks Of Inconsistent Judgments**

A. *Common questions of fact or law are not present—or at the very least do not predominate—in these cases.* The fundamentally different character of the breach-of-contract damages claims by Constellation on the one hand, and the diminution-of-value takings claims by the Niagara Mohawk plaintiffs on the other, demonstrate that common issues of law and fact do not exist. This is confirmed by a review of the alleged commonalities between the cases argued by the government.

For example, the government contends that "many of the witnesses in both cases will be the same." Def. Mot. at 12. There is, however, in fact no reason to believe that that will be true. Although the precise contours of Constellation's case will in large part depend upon how matters unfold, the core of Constellation's breach-of-contract damage claims with regard to the NMP plants will turn on actual or expected expenditures at those plants, arising from DOE's breaches. Witnesses would therefore likely include persons with responsibilities relating to management of spent nuclear fuel at the sites, along with associated accounting, financial, and possibly expert witnesses.

By contrast, such cost information will have absolutely no relevance to the diminution-in-value takings claims asserted by the Niagara Mohawk plaintiffs.[4/] Any factual issues presented by those takings claims (if those claims survive to that point) at their essence would necessarily involve information possessed by valuation and transactional personnel from the buyer and sellers—*i.e.*, completely different persons from those that will testify in Constellation's damages case. Even if some of those potential witnesses might, in fact, be current or former Niagara Mohawk or Constellation employees, they would not be the same current or former employees involved in the Constellation breach of contract damages lawsuit. Accordingly, the government's arguments regarding the allegedly "same witnesses" do not withstand scrutiny, and do not justify consolidation of these unrelated lawsuits.

Likewise, the government's arguments regarding the alleged common issues concerning the "rate and schedule of SNF acceptance," Def. Mot. at 13, and associated arguments that "Government witnesses" on such issues might be the same, *id.* at 12, similarly misapprehend the essential character of the Niagara Mohawk plaintiffs' diminution-in-value takings claims. It is true that issues that the government has raised in other lawsuits brought by current contract holders for other plants, such as so-called "rate issues" (*i.e.*, the minimum mandatory schedule for the acceptance of SNF and HLW by which the Government was contractually obligated to accept contract holders' SNF and/or HLW), and issues regarding recovery of damages under a partial breach of contract theory that will be alleged to occur in the future, will likely be

4/ To the extent that the Niagara Mohawk plaintiffs have included overbroad recitations of takings damages in their complaints that suggest attempted recovery of actual expenditures associated with spent fuel storage, those recitations are inconsistent with the diminution-in-value claims that they actually assert, and the Court in the respective cases is certainly capable of determining the appropriate scope of recoverable takings damages (if any) without resort to consolidating the cases. As described further below, the purported risk of inconsistent judgments in these circumstances is, at best, speculative, and that is not altered by the government's invocation (Def. Mot. at 12, n.7) of the paragraphs in the Niagara Mohawk complaints referring to expenditures for storage of spent nuclear fuel.

implicated in some manner in Constellation's breach-of-contract case.[5/] By contrast, the Niagara Mohawk plaintiffs' diminution-in-value takings claims, by their nature, cannot and will not turn upon the specifics of the precise rate and schedule to which the government was legally required to perform, commencing in 1998, nor upon the recovery of "future" damages. Rather, the mere fact of the DOE's non-performance will be alleged to have caused the compensable injury of allegedly diminished plant value.

So, too, purported issues regarding the government's obligations to accept Greater Than Class C waste, Def. Mot. at 13, and obligations to accept "cannistered fuel," Def. Mot. at 14, are—by definition—irrelevant to the purported diminution-in-value claims of the Niagara Mohawk plaintiffs. Indeed, the government admits that issues related to those obligations (which Constellation believes to also be irrelevant to its breach case) are only arguably relevant to contentions about specific hypothetical DOE acceptance schedules, Def. Mot. at 14, and the Niagara Mohawk plaintiffs' diminution-in-value claims have nothing to do with such schedules.

Similarly, the so-called issues regarding the "one-time fee" do not in any way implicate the purported claims of the Niagara Mohawk plaintiffs. To the extent that the government suggests at page 13 of its motion that it may one day assert that the permitted deferral of a certain contractual fee acts as some sort of failure of contractual "condition precedent" or other bar to recovery, such purported defenses—which Constellation views as meritless—are in any event completely irrelevant to the purely non-contractual takings claims of the Niagara Mohawk plaintiffs. These types of issues are not "common," and do not support consolidation.

---

5/ Constellation and the government have agreed to a temporary stay of Case No. 04-68, in order to take advantage of possible efficiencies that might arise from resolution of such issues in other cases. Such resolutions in other cases could facilitate agreements by the parties in the Constellation case, or at a minimum, inform the Court's consideration of such issues if they remain contested and require resolution in Constellation's breach-of-contract case.

In sum, each of the allegedly "common" issues cited by the government are not applicable to one or the other (or both) sets of cases at issue here, and certainly do not "predominate." Unlike the circumstance in *Karuk Tribe of California v. United States*, 27 Fed. Cl. 429 (1993), the Court in these two sets of cases will not have to evaluate whether the "same government acts created property interests in the same land." *Id.*, 27 Fed. Cl. at 433. Whatever property interests or diminution-in-value takings damages might be pursued by the Niagara Mohawk plaintiffs, it is clear that the Court will not be called upon to address such issues in Constellation's straightforward breach-of-contract damages case.[6/] These cases are quite unlike the parallel takings assertions of the same Native American Reservation property that were the primary claims of the respective plaintiffs in *Karuk*. Consolidation was appropriate in *Karuk Tribe* because individual issues did not "predominate." 27 Fed. Cl. at 433. Here, they clearly do.

B. *These cases do not involve substantial risks of inconsistent judgments.* The government also cites possible "conflicting interpretations of the Government's obligations" under the contracts, Def. Mot. at 10, and the alleged possibility of "double liability" Def. Mot. at 12, as additional grounds for consolidation. The "conflicting interpretations" arguments miss the point because, as explained above, the postulated contractual "interpretations" (presumably, regarding schedule and rate issues) are not relevant to the Niagara Mohawk plaintiffs' diminution-in-value claims. Moreover, those assertions amount to nothing more than the same government arguments for comprehensive consolidation of spent fuel cases that have now been rejected by the Court on several occasions. *E.g.*, Order, *Yankee Atomic Electric Power Company*

6/ Constellation's alternative takings claim, based upon physical occupation of its site, is also of an entirely different character than the novel diminution-in-value claims of the Niagara Mohawk plaintiffs

*v. United States*, No. 98-126C (January 30, 2004); Order, *Yankee Atomic Electric Power Company v. United States*, No. 98-126C (April 16, 2003).

The specter of purported double recovery raised by the government also does not withstand scrutiny. First, although the government contends that the "scope" of the assignment "may become" an issue in both sets of lawsuits, Def. Mot. at 10, that will not, in fact, be the case. The Niagara Mohawk plaintiffs do not contend that they retained any rights when they assigned all of the rights and duties under the Standard Contracts to Constellation pursuant to 42 U.S.C. § 10222(b)(3). There can therefore be no dispute that Constellation is the sole party entitled to recover all breach of contract damages associated with the NMP plants. These circumstance are, again, quite unlike those in *Entergy*, 62 Fed. Cl. 798, where the "line" to be drawn between the claims of the two plaintiffs seeking breach of contract damages under the same contract meant that issues "associated with the assignment of the Standard Contract" were implicated in both cases. 62 Fed. Cl. at 802.

Second, the contention that a hypothetical diminution-in-value takings recovery by the Niagara Mohawk plaintiffs must "somehow" be accounted for in Constellation's breach of contract case, Def. Mot. at 11, is a highly speculative proposition, which does not negate the above-described factors militating strongly against consolidation. As a threshold matter, even the theoretical premise for this contention is faulty—there is no rule of law that says that acts (or failures to act) by the government cannot both constitute a breach of contract to one party and a compensable taking to another, and that the government is entitled to limit its overall exposure merely because it has harmed multiple parties to whom it owes separate legal duties. To the extent that the government contends that damages that the Niagara Mohawk plaintiffs might recover constitute a benefit to Constellation that must be accounted for in Constellation's

recovery, such a contention is unsupported and speculative in the extreme.[7/] In other cases, the government itself has characterized diminution-in-value claims such as those asserted by the Niagara Mohawk plaintiffs here as being "unrecoverable as a matter of law" and by their "very nature highly speculative."[8/] In support of consolidation in *these* cases, however, the government now embraces such claims and then builds upon that speculation by suggesting that the alleged diminution in sale price constituted a benefit to Constellation.[9/] Moreover, the argument itself is flawed, since according to this speculative construct Constellation would now be holding the "diminished" assets, and therefore be injured, rather than benefited, by the government. In any event, the speculation-upon-speculation upon which the government builds its "double recovery" arguments are a thin reed upon which to rest the extraordinary step of consolidating these disparate cases. There is no *bona fide* threat of impermissible double recovery here that would justify the procedural and practical morass that consolidation of these cases would entail.

---

7/ Again, there are fundamental legal and theoretical problems with the government's arguments. The Federal Circuit has made clear that benefits achieved by an injured party may only be accounted for in a damage award if they are "*directly due* to the actions in mitigation," *LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363, 1373 (2003) (emphasis supplied), and no one could seriously contend that Constellation bought the NMP plants as attempted "mitigation" of DOE's spent fuel performance failures.

8/ Defendant's Reply to Motion to Dismiss Or, In the Alternative, For Summary Judgment, And Defendant's Response to Plaintiff's Cross-Motion For Summary Judgment On Liability, filed in *Boston Edison Company v. United States*, No. 99-447C (Lettow, J.), on August 26, 2004, at p. 42, 46.

9/ Constellation particularly takes issue with the government's statements at page 11-12 of its motion that "(according to Constellation) it has received compensation from Niagara – in the form of a reduced purchase price." For the record, no such assertions are "according to Constellation." Constellation disputes the notions that there was a "reduced purchase price" or that it was "able to compensate itself" for DOE's failures in connection with purchase of the NMP plants or in any other way, as the government contends.

**3. The Cases Should Not Be Consolidated Because Consolidation Would Not Further The Interests Of Efficiency Or Justice**

The government argues that because the three cases have remained stayed since they were filed, they are effectively in the same procedural posture and consolidation is therefore warranted. Def. Mot. at 14-15. That is overly simplistic, ignores the fundamentally different nature of the two types of lawsuits described above, and ignores how the lawsuits are likely to eventually be pursued. Indeed, when one considers that the Constellation breach-of-contract case will likely center upon testimony and evidence of actual expenditures made for storage of spent nuclear fuel, and that the Niagara Mohawk cases will center upon valuation issues and the sale of the plants, it is hard to imagine such cases being tried in the same proceeding. The reality is that there would be two entirely separate, non-overlapping evidentiary proceedings (if the Niagara Mohawk plaintiffs make it that far). Constellation respectfully submits that to force those unrelated proceedings to occur at the same time and in the same courtroom (and to force pre-trial proceedings to adhere to the same schedules and restrictions) would not further the interests of judicial efficiency and economy, and would be unfair to both sets of plaintiffs.

At some point, the issues presented in other pending current-owner spent fuel cases that are admitedly implicated in Constellation's breach of contract case (namely, rate and schedule issues, and recovery of future damages issues) will either be resolved, or it will become apparent that resolution will not reasonably occur or provide the hoped-for efficiencies, but in either case it will then be prudent for the Constellation lawsuit to go forward. For their part, the Niagara Mohawk plaintiffs presumably desire to take advantage of developments in other "seller's" diminution-in-value spent fuel cases, and at some point such developments in those other cases will either occur or it will become apparent that the hoped-for guidance will not occur. The potential external drivers of these two sets of cases, however, are quite different, and quite

unlikely to occur simultaneously. It is not sensible, nor is it fair to either set of plaintiffs, to hitch these two sets of cases together at the outset, and force either set of plaintiffs to have the prosecution of its case dictated by external events wholly unrelated to its own claims.

Finally, Constellation wishes to note that it expects that another Constellation party will soon become a plaintiff in another pending spent fuel case, and future consolidation of that case with this prior Constellation case, No. 04-68, is possible. In *Rochester Gas and Electric Company v. United States*, No. 04-118 (Lettow, J.), a subsidiary of Constellation acquired the nuclear plant there at issue (the R.E. Ginna Nuclear Power Plant) after the lawsuit was filed, and was assigned all rights and duties under the applicable Standard Contract. A motion to substitute the Constellation entity that acquired the Ginna plant for the original plaintiff is currently pending (the government has opposed), and a hearing on that motion is scheduled for February 8, 2005. Eventually, the breach of contract damage claims for all of the Constellation plants (i.e., the Ginna plant in No. 04-118, and the Calvert Cliffs and NMP plants in No. 04-68) could be expected to involve testimony by the same Constellation fuels management, accounting, financial, and other personnel, as well as damage theories that might implicate all of the Constellation entities and contracts. Accordingly, and again depending somewhat upon how matters unfold, Constellation may seek transfer and consolidation so that there is only one "Constellation" spent nuclear fuel case, which would be this one, No. 04-68C. Should that happen, the incongruity and awkwardness of attempting to append the NMP diminution-in-value cases to this one become even more apparent.

**CONCLUSION**

For the reasons described above, Constellation respectfully requests that the Court deny the government's motions to transfer and consolidate.

s/ Brad Fagg
Brad Fagg (Counsel of Record)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile

December 27, 2004

Of Counsel:

Paul M. Bessette
MORGAN, LEWIS & BOCKIUS LLP

Attorneys for Plaintiffs
Constellation Generation Group, LLC,
Calvert Cliffs Nuclear Power Plant, Inc., and
Nine Mile Point Nuclear Station, LLC

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 27th day of December, 2004, the foregoing was filed with the Court electronically, and service is thereby deemed to have been made upon all counsel of record.

s/ Brad Fagg