IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSTELLATION GENERATION GROUP, LLC,<br>CALVERT CLIFFS NUCLEAR POWER PLANT, INC.,<br>NINE MILE POINT NUCLEAR STATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | ) | No.04–0068C<br>(Senior Judge Margolis) |

DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANT'S MOTION TO TRANSFER AND
CONSOLIDATE IN ACCORDANCE WITH RCFC 40.2(a)(3) AND 42.1

Defendant, the United States, respectfully submits this reply to the "Opposition By The Constellation Parties To Defendant's Motion To Transfer And Consolidate," filed December 27, 2004, and to the response that the plaintiffs in Niagara Mohawk Power Corp. v. United States, No. 04-125C (Fed. Cl.), filed in that case.

DISCUSSION

I. BECAUSE THE CHIEF JUDGE HAS TRANSFERRED ONE OF THE *NIAGARA* CASES TO THE JUDGE PRESIDING OVER THE *CONSTELLATION* CASE, PART OF THE GOVERNMENT'S MOTION HAS BEEN RENDERED MOOT

The Government's motion to transfer and consolidate involves three cases: Constellation Generation Group, LLC v. United States, No. 04-0068C (Fed. Cl.); Niagara Mohawk Power Corp. v. United States, No. 04-124C (Fed. Cl.); and Niagara Mohawk Power Corp. v. United States, No. 04-125C (Fed. Cl.). When we filed our motion to transfer and consolidate on December 8, 2004, these three cases were pending before three different judges: Senior Judge Margolis (Constellation, No. 04-0068C), Judge Sypolt (Niagara, No. 04-124C); and Judge

Allegra (Niagara, No. 04-125C). After we filed our motion to transfer and consolidate, by order dated December 21, 2004, the Chief Judge transferred the Niagara case then pending before Judge Sypolt to Senior Judge Margolis. Accordingly, it appears that the Court has rendered our request to transfer one of the two Niagara cases moot. Nevertheless, we respectfully request that the Court transfer the remaining Niagara case so that all three cases are pending before the same judge and, further, consolidate the three cases.

## II. THE *NIAGARA* PLAINTIFFS DO NOT OPPOSE THE GOVERNMENT'S REQUEST FOR TRANSFER AND CONSOLIDATION

The plaintiff in Niagara Mohawk Power Co. v. United States, No. 04-124C (Fed. Cl.), did not file a response to the Government's motion to transfer and consolidate, and, accordingly, we assume that it does not oppose the Government's request. The plaintiffs in the other Niagara case, No. 04-125C, filed a response in that case, indicating that they, too, do not oppose the Government's motion to transfer and consolidate. Because that response was filed only in the Niagara case and was not filed with the judge presiding over the Constellation case, we have attached a copy of that response to this reply so that the Court has before it the views of all of the parties to these cases.

## III. CONSTELLATION'S OPPOSITION TO THE GOVERNMENT'S MOTION TO TRANSFER AND CONSOLIDATE LACKS MERIT

### A. The *Constellation* Case Involves The Same Property As The Two *Niagara* Cases

Although the plaintiffs in the Niagara cases do not oppose our transfer and consolidation request, the plaintiffs in the Constellation case have identified several reasons for opposing that request. First, the Constellation plaintiffs assert that, contrary to the situation in Entergy Nuclear

Indian Point 2 v. United States, 62 Fed. Cl. 798 (2004), these three cases do not involve the "same contract, property or interest," as defined by RCFC 40.2(a)(1)(B), because the Constellation plaintiffs are seeking breach of contract damages while the Niagara plaintiffs are seeking damages for a taking of property pursuant to the Fifth Amendment of the United States Constitution, Constellation Opp., at 2, and, therefore, that the cases clearly involve "wholly separate and distinct" rights that do not support consolidation. Id. However, as we explained in our motion to transfer and consolidate, the Constellation case relates to the same nuclear reactors, the same spent nuclear fuel ("SNF"), and the same failure by the Government to accept that SNF as the two Niagara cases. Accordingly, Constellation's assertion that its case does not involve the "same property" as the two Niagara cases is unfounded.

Further, although it asserts that its claim is different from the Niagara plaintiffs' claims because it is asserting a contract claim and the Niagara plaintiffs are asserting takings claims, Constellation fails to mention that, in its complaint, it, like the Niagara plaintiffs, is also claiming a taking of its property in violation of the Fifth Amendment. Constellation Compl. ¶¶ 53-57. Its taking claim appears indistinguishable from the takings claims that the Niagara plaintiffs are pursuing. Even if Constellation now wishes to focus its case upon its breach of contract claim, it is clear that it alleged a takings claim that this Court will have to resolve. Further, given that both Constellation and the Niagara plaintiffs have alleged takings claims arising out of the same contracts, we cannot understand Constellation's arguments that the various plaintiffs' legal theories are somehow wholly distinct and not directly related.

In any event, even without considering Constellation's takings claim, it is clear that the Niagara plaintiffs' takings claims arise solely out of the contracts at issue in the Constellation

case and are directly related to those contracts. As the Court is well aware, where a party's rights are created by contract, a party cannot state a takings claim founded upon a breach of that contract. See, e.g., LaVan v. United States, 382 F.2d 1340, 1351-52 (Fed. Cir. 2004); Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); Smith v. United States, 58 Fed. Cl. 374, 389 (2003); Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1, 10 (1997) (citing J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969)). Further, "the descriptive label affixed to a claim for pleading purposes is not determinative of its real nature." Conn v. United States, 177 Ct. Cl. 319, 324, 366 F.2d 1019, 1021 (1966).

Although Constellation asserts that the Niagara plaintiffs' cases involve takings claims unrelated to the contracts associated with the nuclear reactors that the Niagara plaintiffs owned and that Constellation now owns, the Niagara plaintiffs' rights to have the Department of Energy ("DOE") accept their SNF are derived wholly from the contracts into which they entered with DOE. Absent those contracts, the Niagara plaintiffs would not have had any right to require DOE to accept their SNF. The Niagara plaintiffs are now alleged to have assigned their contracts to Constellation, which is maintaining its own action here arising out of those contracts. Because any cause of action that the Niagara plaintiffs have against the Government derives from the contracts at issue in Constellation's case, it is clear that the Constellation case also involves the "same contract," as that term is used in RCFC 40.2(a)(1)(B), that is at issue in each of the Niagara cases. The fact that one set of plaintiffs has described their case as a "contract" case while other plaintiffs have described their cases as "takings" actions does not change the fact that all of them involve rights that arise solely from the same contracts.

Finally, Constellation's action is apparently based upon an assignment of rights that it obtained from the plaintiffs in the two Niagara cases, through an assignment of the contracts at issue in Constellation's case. In fact, Constellation asserts in its response to our motion that its contract claims involve an assignment of the Niagara plaintiffs' claims against the United States. Constellation Opp., at 4. This Court will have to resolve the scope and effect of these assignments in each of these three cases to determine whether the assignments of claims are valid and, if they are, the scope of rights that the Niagara plaintiffs retained that would allow them to maintain a lawsuit despite the assignments. The Court will also have to ensure that no duplicative damages are awarded to Constellation on the one hand and to the Niagara plaintiffs on the other. Accordingly, Constellation's arguments that these cases are not "directly related" are unfounded.

B. Constellation's Argument That No Risk Of Inconsistent Judgments Exists Is Unfounded

Constellation's assertion that the elements of damages that Constellation and the Niagara plaintiffs are claiming are clearly distinguishable, that there is no risk of inconsistent judgments, and that the witnesses for the various plaintiffs' claims will not overlap, Constellation Opp. at 5-7, is incorrect. As we explained in our motion to transfer and consolidate, it appears that the witnesses associated with issues surrounding the assignment that forms the basis of Constellation's claims will be the same in the Constellation and Niagara cases, and the scope and validity of those assignments will certainly be an issue here.

Further, the Niagara plaintiffs' takings claims are based upon the proposition that the Government's failure to begin SNF acceptance by January 31, 1998, as set forth in the Standard

Contract, resulted in a taking of those plaintiffs' property. Notwithstanding the case law that demonstrates that a takings claim may not be predicated upon a breach of contract, if the Niagara plaintiffs are allowed by this Court to maintain this claim, the rate of SNF acceptance that DOE was obligated to meet as part of its contractual obligations is directly relevant to a determination of liability and damages. Specifically, the Niagara plaintiffs' claims are predicated upon the existence of SNF upon their property as of the date of sale to Constellation that, but for the breach, would not have been stored upon that property and the "diminished value" of the sales price for their facilities based upon that additional SNF. However, if the reactors that the Niagara plaintiffs owned did not have acceptance allocations under the acceptance queue set forth in the Standard Contract prior to the date of sale and assignment to Constellation, there could be no "diminished value" resulting from DOE's breach even under the Niagara plaintiffs' theories. This is because, under that scenario, the SNF upon site at the time of sale was exactly the same quantity that would have been on-site had DOE begun performance in 1998.

Here, in a case that involves not simply "similar" contracts, but the same contract concerning the same property and the same SNF, the Government should not be required to litigate rate of acceptance issues and other relevant issues in three separate cases before two separate judges. In fact, although Constellation dismisses the proposition that, if the Niagara plaintiffs were entitled to recover "diminished value" damages from the Government, the Government should be entitled to recoup that money from any damages award to Constellation, we do not understand how the Court could find that Constellation paid a lesser sum of money in purchasing the Niagara plaintiffs' rights in their reactors, that Constellation could then recover complete damages from the Government resulting from the Government's breach of contract

(making Constellation "whole"), yet allow Constellation to retain the benefit of its "reduced" purchase price resulting from the breach while the Government is required to pay additional damages to the Niagara plaintiffs because of the breach. In fact, in its response to our motion to transfer and consolidate, Constellation affirmatively asserts that it did not pay a "reduced purchase price" to the Niagara plaintiffs based upon DOE's breach. Constellation Opp. at 10 n.9. Consolidation would allow the Government, and the Court, to resolve duplicative issues in a single proceeding, with a uniform and consistent result. Further, Consolidation would preclude the need for the Government to attempt to implead Constellation into the Niagara cases in some manner in an effort to protect its rights and interests. Constellation's position that the Government may simply have to pay duplicative damages awards, and that the Government should not be allowed to litigate all issues surrounding the Niagara plaintiffs' "diminished value" claims in a single proceeding, would simply increase the risk of inconsistent judgments. Although Constellation asserts that the risk of duplicative damages awards is highly speculative, Constellation does not identify any reason that the Government should bear the risk of inconsistent judgments against it. The presence of identical legal and factual issues in both cases supports transfer and consolidation here.

### C. Constellation's Assertion That It May Seek To Consolidate Its Case With Another Case In Which Constellation May Become A Plaintiff Has No Bearing Upon The Government's Motion

Constellation next asserts that it "expects that another Constellation party will soon become a plaintiff in another pending spent fuel case, and future consolidation of that case with this prior Constellation case, No. 04-68, is possible." Constellation Opp., at 12. Constellation states that it "may seek transfer and consolidation so that there is only one "Constellation" spent

nuclear fuel case, which would be this one, No. 04-68C," and that, "[s]hould that happen, the incongruity and awkwardness of attempting to append the [Niagara] diminution-in-value cases to this one become even more apparent." Id.

The case to which Constellation is referring, currently styled as Rochester Gas & Electric Co. v. United States, No. 04-118C (Fed. Cl.) (Lettow, J.), involves a contract that, though similar to all of the SNF contracts, relates to a different facility than the contracts at issue in the current cases. Although we will address any requests for consolidation of those cases when and if those requests are made, Constellation should not be permitted to attempt to add cases involving other contracts to this action to avoid consolidation of cases involving the same contracts, the same reactors, and the same property. Because the Constellation and Niagara cases at issue in the Government's pending motion to transfer and consolidate all relate to the same property and contracts, the motion to transfer and consolidate should be granted.

## CONCLUSION

For the foregoing reasons, and those set forth in our motion to transfer and consolidate, the Government respectfully requests that the motion be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

January 10, 2005

Attorneys for Defendant

# ATTACHMENT